JIM BURCH & ASSOCIATES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6552–78.     Filed February 3, 1981.

*Hugh O. Mussina,* for the petitioner.
*Virginia C. Schmid,* for the respondent.

OPINION

EKMAN, *Judge:*\* Respondent determined deficiencies in petitioner's income taxes for the calendar years 1974 and 1975 in the amounts of $41,639.14 and $6,269.73, respectively, and an addition to tax under section 6653(a), I.R.C. 1954, for 1974 in the amount of $2,081.95.

Due to concessions by the parties, the issues remaining for decision are (1) whether consolidated net operating losses which were incurred by petitioner and its wholly owned subsidiary during the taxable years 1976 and 1977, and which are attributable solely to the subsidiary can be carried back to petitioner's separate return year 1974, and (2) whether any part of petitioner's underpayment of tax for 1974 was due to negligence or intentional disregard of rules and regulations within the purview of section 6653(a).

All of the facts are stipulated. The stipulation of facts, with exhibits attached thereto, is incorporated herein by reference. The relevant facts are as follows.

Petitioner, a Texas corporation incorporated during 1968, has its principal office in Dallas, Tex. Prior to 1974, petitioner was a subchapter S corporation. However, petitioner's subchapter S election was revoked as of January 1, 1974.

---

\*By order of the Chief Judge dated Sept. 12, 1980, this case was reassigned from Judge Herbert L. Chabot to Judge Sheldon V. Ekman.

B. W. Coastal Sales, Inc., was incorporated under the laws of the State of Texas on January 30, 1976. Its name was changed to 20th Century Plastic Pipe, Inc., on April 15, 1976, and it will be hereinafter referred to as BW/20th.

On February 1, 1976, the initial shares of stock in BW/20th were issued as follows: James A. Burch, Sr., 200 shares; James A. Burch, Jr., 200 shares; and Duncan Burch, 1,600 shares. James A. Burch, Jr., and Duncan Burch are the sons of James A. Burch, Sr. During the period February 1, 1976, through March 31, 1976, BW/20th was primarily in the business of purchasing and selling pipes, pipefittings, and other plumbing supplies. On March 10, 1976, the board of directors of BW/20th met to discuss the possibility of BW/20th becoming a wholly owned subsidiary of petitioner. According to the minutes of that meeting, Duncan Burch, the president of BW/20th, stated that this would be accomplished by petitioner's purchasing from the shareholders all of the shares of BW/20th at their stated par value. The directors further determined that such action would be advantageous to BW/20th. On March 31, 1976, the then-existing share certificates of BW/20th were canceled and a share certificate was issued to petitioner evidencing its ownership of 2,000 shares in BW/20th.

Prior to January 30, 1974, petitioner operated a branch office in Houston, Tex. At that time, Burch-Yates of South Texas, Inc. (hereinafter South), was incorporated and undertook the operation of the business conducted by that branch office. All of the shares of stock in South were initially issued to James A. Burch, Sr. Inventory worth $75,000, which was located at the branch office of petitioner, was purchased from petitioner by South. Petitioner did not reflect this sale on its return for 1974. Petitioner concedes that its taxable income for 1974 should be increased in the amount of $75,000 to reflect the transfer of that inventory.

Petitioner filed consolidated Federal income tax returns with BW/20th for the years 1976 and 1977. Petitioner and BW/20th incurred consolidated net operating losses during 1976 and 1977 in the amounts of $40,808.42 and $28,091, respectively. These losses are attributable solely to the operations of BW/20th.

Petitioner contends that the net operating losses incurred during 1976 and 1977 may be carried back to its separate taxable return year 1974. In support of this contention, petitioner directs

our attention to section 1.1502–79(a), Income Tax Regs. The general rule regarding the carryover and carryback of consolidated net operating losses is found in section 1.1502–79(a)(1), Income Tax Regs., which states in pertinent part:

(a) *Carryover and carryback of consolidated net operating losses to separate return years*—(1) *In general.* (i) If a consolidated net operating loss can be carried under the principles of section 172(b) and paragraph (b) of section 1.1502–21 to a separate return year of a corporation (or could have been so carried if such corporation were in existence) which was a member in the year in which such loss arose, then the portion of such consolidated net operating loss attributable to such corporation (as determined under subparagraph (3) of this paragraph) shall be apportioned to such corporation (and any successor to such corporation in a transaction to which section 381(a) applies) and shall be a net operating loss carryover or carryback to such separate return year; accordingly, such portion shall not be included in the consolidated net operating loss carryovers or carrybacks to the equivalent consolidated return year. Thus, for example, if a member filed a separate return for the third year preceding a consolidated return year in which a consolidated net operating loss was sustained and if any portion of such loss is apportioned to such member for such separate return year, such portion may not be carried back by the group to its third year preceding such consolidated return year.

An exception to the general rule is contained in section 1.1502–79(a)(2), Income Tax Regs., which provides:

(2) *Nonapportionment to certain members not in existence.* Notwithstanding subparagraph (1) of this paragraph, the portion of a consolidated net operating loss attributable to a member shall not be apportioned to a prior separate return year for which such member was not in existence and shall be included in the consolidated net operating loss carrybacks to the equivalent consolidated return year of the group (or, if such equivalent year is a separate return year, then to such separate return year), provided that such member was a member of the group immediately after its organization.

Petitioner's position is that the consolidated net operating losses incurred during 1976 and 1977, which are solely attributable to BW/20th, may be carried back to the 1974 separate return of petitioner under the authority of the exception provided by section 1.1502–79(a)(2), Income Tax Regs. Petitioner does not contend that section 1.1502–79(a), Income Tax Regs., is invalid. Rather, petitioner argues that BW/20th was a member of the consolidated group immediately after its organization within the meaning of section 1.1502–79(a)(2), Income Tax Regs. We disagree.

Petitioner offers alternative rationales for its assertion that BW/20th was a member of the group immediately after its

organization. Petitioner's primary contention is that the organization of BW/20th was not completed until BW/20th became a wholly owned subsidiary of petitioner. Alternatively, petitioner argues that BW/20th was owned by agents of petitioner during the period January 30, 1976, through March 31, 1976.

Petitioner requests that we liberally construe section 1.1502–79(a)(2), Income Tax Regs., so as to include within the "organization" of BW/20th, as that term is used in the regulation, the incorporation, operation, and conveyance of BW/20th by the original shareholders to petitioner. As a basis for this request, petitioner asserts that there was no intent on the part of petitioner to employ BW/20th as a tax avoidance device, an assertion which respondent does not assail. However, the absence or presence of a tax-avoidance motive is irrelevant to the issue. Rather, our task is to interpret and apply the applicable law to the facts presented. We find nothing in the clear language of section 1.1502–79(a)(2), Income Tax Regs., or in the case law to support the strained construction urged by petitioner.

Concerning the contention that BW/20th was owned by agents of petitioner, we find the record totally devoid of evidence of an agency relationship. Petitioner has the burden of proving such relationship and clearly has failed to meet that burden.

Section 1501 provides that an affiliated group of corporations shall have the privilege of making a consolidated return of income. An "affiliated group" is defined by section 1504(a) as:

one or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if—

(1) Stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of each of the includible corporations (except the common parent corporation) is owned directly by one or more of the other includible corporations; and

(2) The common parent corporation owns directly stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includible corporations.

Section 1502 vests the Secretary of the Treasury with the broad authority to:

prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return

and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

Section 1501 conditions the privilege of making a consolidated return upon the consent of all of the members[1] of the affiliated group to be bound by all the consolidated return regulations promulgated under section 1502.[2]

In the case of a corporation which is a member of the affiliated group for a fractional part of the year, the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group. Sec. 1501.

Section 1.1502–76(b)(1), Income Tax Regs., provides that a consolidated return properly includes the income of a corporation only for that portion of the taxable year during which it was a member of the affiliated group. "If the consolidated return of a group properly includes the income of a corporation for only a portion of such corporation's taxable year * * * then the income for the portion of such taxable year not included in the consolidated return must be included in a separate return." Sec. 1.1502–76(b)(2), Income Tax Regs.

BW/20th was incorporated under the laws of the State of Texas on January 30, 1976. The initial stock in the corporation was issued to James A. Burch, Sr., James A. Burch, Jr., and Duncan Burch. No part of the stock of BW/20th was owned by petitioner until March 31, 1976. During the period January 30,

---

[1]Sec. 1.1502–1, Income Tax Regs., which defines certain terms used within the consolidated return regulations provides in part:

(a) *Group.* The term "group" means an affiliated group of corporations as defined in section 1504. See sec. 1.1502–75(d) as to when a group remains in existence.

(b) *Member.* The term "member" means a corporation (including the common parent) which is included within such group.

(c) *Subsidiary.* The term "subsidiary" means a corporation other than the common parent which is a member of such group.

(d) *Consolidated return year.* The term "consolidated return year" means a taxable year for which a consolidated return is filed or required to be filed by such group.

(e) *Separate return year.* The term "separate return year" means a taxable year of a corporation for which it files a separate return or for which it joins in the filing of a consolidated return by another group.

[2]The petitioner's consent to be bound by the consolidated return regulations does not prevent a challenge to the validity of those regulations. *Georgia-Pacific Corp. v. Commissioner,* 63 T.C. 790 (1975). However, no such challenge is presented herein.

1976, through March 30, 1976, BW/20th was not a member of an affiliated group inasmuch as no part of the stock of BW/20th was owned by petitioner. Sec. 1504(a). From March 31, 1976, through the remainder of the taxable year, BW/20th and petitioner did constitute an affiliated group within the purview of section 1504. The consolidated return of the group may include the income or loss of BW/20th only for that part of 1976 during which it was a member of the affiliated group. Sec. 1501; sec. 1.1502–76(b)(1), Income Tax Regs.[3] The income or loss generated during the period January 30, 1976, through March 31, 1976,[4] must be included on a separate return filed by BW/20th for that period. Sec. 1.1502–76(b)(2), Income Tax Regs.; sec. 6012(a).[5] The period January 30, 1976, through March 31, 1976, constitutes a separate taxable year of BW/20th. Sec. 1.1502–76(d), Income Tax Regs.

Under the facts presented, BW/20th was not a member of the affiliated group immediately after its organization. Consequently, section 1.1502–79(a)(2), Income Tax Regs., is inapplicable in the instant case.

The parties agree that all the consolidated net operating losses incurred during 1976 and 1977 are solely attributable to BW/20th. Inasmuch as the period January 30, 1976, through March 31, 1976, constitutes a separate return year of BW/20th, the consolidated net operating loss apportioned to BW/20th must be carried back to that separate taxable year and may not be carried back to the separate taxable years, 1974 and 1975, of

---

[3]Sec. 1.1502–76(b)(5)(i), Income Tax Regs., provides that for purposes of the regulations under sec. 1502:

(i) If within a period of 30 days after the beginning of a corporation's taxable year (determined without regard to the required change to the parent's taxable year) it becomes a member of a group which files a consolidated return for a taxable year which includes such period, then such corporation may at its option be considered to have become a member of the group as of the beginning of the first day of such corporation's taxable year, * * *

Inasmuch as BW/20th became a member of the affiliated group more than 30 days after the beginning of its taxable year, that regulation is inapplicable herein.

[4]It is stipulated that BW/20th was in the business of purchasing and selling pipe and other plumbing supplies during this period. Petitioner can thus not be heard to contend that its existence had not yet begun.

[5]Sec. 6012(a)(2) requires an income tax return to be made by every corporation subject to taxation.

petitioner. Sec. 1.1502–79(a)(1), Income Tax Regs.; see *Electronic Sensing Products, Inc. v. Commissioner*, 69 T.C. 276 (1977).[6]

The remaining issue for decision is whether respondent properly determined that for the taxable year 1974 petitioner is liable for the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations.

Petitioner failed to report as income on its return for 1974, $75,000 which amount reflects the transfer of inventory to South. Petitioner has conceded that its taxable income for 1974 should be increased in the amount of $75,000 to reflect the transfer of that inventory.

Respondent's determination that petitioner's failure to report that amount was due to negligence is prima facie correct. The burden of proving that the addition to tax is erroneous rests on petitioner. *Pritchett v. Commissioner*, 63 T.C. 149 (1974); *Enoch v. Commissioner*, 57 T.C. 781 (1972); *Leroy Jewelry Co. v. Commissioner*, 36 T.C. 443 (1961). Rule 142(a), Tax Court Rules of Practice and Procedure.

The record discloses no evidence that the failure to report income was not due to negligence or intentional disregard of rules and regulations. In fact, the evidence presented sheds no light on the question of why petitioner failed to report the $75,000 as income. On brief petitioner asserts that "neither of the adjustments * * * would constitute negligence, even though they are sizable in amount." Such an assertion, unsupported by the record, can hardly serve to sustain petitioner's burden as to this issue.

Inasmuch as petitioner has failed to sustain its burden of proving respondent's determination erroneous, respondent's determination that petitioner is liable for the addition to tax is sustained.

*Decision will be entered under Rule 155.*

---

[6]See sec. 1.1502–79(a)(4), example (*1*), Income Tax Regs.